**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JAMES MILLIMAN, JR.,

                                Plaintiff,

    v.                                                No. 6:14-CV-310
                                                                      (GLS/CFH)

CAROLYN W. COLVIN, Commissioner of
Social Security,

                                Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

OFFICE OF PETER W. ANTONOWICZ      PETER W. ANTONOWICZ, ESQ.
Attorney for Plaintiff
148 West Dominick Street
Rome, New York 13440

HON. RICHARD S. HARTUNIAN          AMANDA LOCKSHIN, ESQ.
United States Attorney for the           Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff James Milliman ("Milliman")[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

[2] The original named plaintiff, James Milliman, is deceased. Milliman's son, James Milliman, Jr. was substituted as plaintiff in this action pursuant to the Court's Order dated November 13, 2014. Dkt. No. 17.

Milliman moves for a finding of disability, and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 21, 25.

## I. Background

### A. Facts

Born on January 31, 1973, Milliman was thirty-eight years old when he applied for disability benefits. T. 178.[3] Milliman graduated from high school and completed approximately three months of college. Id. at 35, 231. Milliman's previous work experience included bus building and repairs, delivering vehicle parts for a bus company, operating a forklift, and working as a machinist. Id. at 37-38. Milliman alleged disability from multiple impairments including a lumbar spine injury and depression with suicidal ideations. Id. at 34, 402-05.

### B. Procedural History

On March 31, 2011, Milliman protectively filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq., claiming an alleged onset date of March 29, 2011. T. 178-81. That application was denied on July 12, 2011. Id. at 76-86. Milliman requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Patrick Kilgannon on November 9, 2012. Id. at 89-90, 30-75 (transcript of the hearing). In a decision dated November 29, 2012, the ALJ held that Milliman was not entitled to disability benefits.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 10.

2

Id. at 12-29. Milliman's counsel filed a timely request for review with the Appeals Council, and on February 28, 2014, the request was denied, thus making the ALJ's findings the final decision of the Commissioner. Id. at 1-8. This action followed. For the following reasons, it is recommended that the Commissioner's determination be affirmed.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported

3

by substantial evidence, it is conclusive. 42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the

4

> claimant has a 'severe impairment' which significantly limits
> his [or her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence,
> the claimant has an impairment which is listed in Appendix 1
> of the regulations. If the claimant has such an impairment,
> the [Commissioner] will consider him [or her] disabled
> without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a 'listed'
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work. Finally, if the claimant is
> unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the
> claimant could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Kilgannon's Findings

Milliman, represented by counsel, testified at the hearing held on November 9, 2012. T. 30-75 (administrative hearing transcript). Using the five-step sequential evaluation, the ALJ found that Milliman (1) had not engaged in substantial gainful activity since March 29, 2011, the alleged onset date; (2) had the following severe medically determinable impairments: back disorder, obesity, and depression; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments

5

in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained

> the residual functional capacity [("RFC")] to perform light work, as defined in 20 CFR 404.1567(b), except that he can frequently use ramps or stairs, occasionally use ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, or crawl.  He is limited to low stress jobs with "low stress" defined as involving only occasional decision making, occasional changes at the workplace, and no fast paced work;

and thus, (5) given his age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy. Id. at 12-29.  Therefore, the ALJ determined that Milliman was not disabled.

### D.  Milliman's Contentions

Milliman first contends that the ALJ improperly evaluated his credibility.  Dkt. No. 21 at 7-9.  Milliman next alleges that the ALJ failed to give controlling weight to the opinion of Milliman's treating provider and also failed to properly analyze the medical evidence.  Id. at 9-16.

### 1.  RFC

The ALJ determined that Milliman retained the RFC:

> to perform light work as defined in 20 CFR § 404.1567(b) except that he can frequently use ramps or stairs, occasionally use ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, or crawl.  He is limited to low stress jobs with "low stress" defined as involving only occasional decision making, occasional changes at the workplace, and no fast paced work.

T. 19.  In reaching this assessment, the ALJ discussed the notes and opinions of Drs. Jeanne Shapiro, Ph.D; Kalyani Ganesh, M.D.; David Eng, M.D.; Joel Amidon, II, D.O.;

6

and Edwin Vera, F.N.P., as well as the notes and opinions of agency mental health consultants, C. Butensky and J. Hartner. T. 21-22.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in step five of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

### i. Milliman's Credibility

Milliman alleges that the ALJ did not properly assess his credibility according to applicable legal standards. Dkt. No. 21 at 7-8. Defendant alleges that the ALJ properly assessed Milliman's credibility and properly considered all of his subjective complaints. Dkt. No. 25 at 10-12.

"It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant. Carroll v.

Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citing Richardson v. Perales, 402 U.S. 389, 398 (1971)) (additional citations omitted). The ALJ's assessment regarding the claimant's subjective complaints of pain is a two-step inquiry. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). First, the ALJ must determine "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that the claimant does not suffer from such a medically determinable impairment, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quoting 20 C.F.R. § 404.1529(b)). However, an ALJ cannot reject a claimant's statements about the limiting effect of symptoms "solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. § 404.1529(c)(2). The evidence to be considered by the ALJ includes "information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] treating or nontreating source, and observations by [Social Security Administration] employees and other persons." 20 C.F.R. § 404.1529(c)(3).

If a medically-determinable impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. DDR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

    (i) [The claimant's] daily activities;

> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate. . .pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and,
>
> (vii) Other factors concerning [the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

In determining what amount of credibility, if any, to afford a claimant's testimony regarding pain, the ALJ must consider all of the objective medical and additional evidence with the claimant's subjective complaints to determine whether there are any inconsistencies or conflicts. 20 C.F.R. § 404.1529(c)(4). If a claimant's subjective complaints of pain are consistent with the objective medical evidence, the ALJ will include the claimant's complaints in his or her assessment of the claimant's RFC. Id. "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons, 'with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV.

9435(JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

Here, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" T. 20. However, the ALJ also found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." Id. Ultimately, the ALJ found Milliman to be partially credible. Id. at 21.

Milliman argues that "[t]he ALJ did not properly consider [Milliman's] pain and psychological symptoms in determining he could perform work at the SGA level." Dkt. No. 21 at 8. In support of this claim, Milliman argues that he experienced increased pain even after returning to sedentary work. Id. Specifically, Milliman cites extensively to an office note from a March 31, 2011 visit to Edwin Vera, FNP, where Milliman stated that he attempted to return to work but found himself in an increased state of pain. Id.; see T. 338. These complaints were self-reported and Vera's objective findings indicated that Milliman suffered from only a "moderate" amount of pain in his lumbosacral spine. T. 338. Furthermore, Vera, a family nurse practitioner, is not an "acceptable medical source." See Hall v. Astrue, 677 F. Supp. 2d 617, 627 (W.D.N.Y. 2009); 20 C.F.R. § 404.1513(d)(1); Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). As such, Vera's medical opinion is not entitled to controlling weight. SSR 06-03P, 2006 WL 2329939, at *2. The ALJ gave little weight to Vera and Dr. Amidon because their opinions were "inconsistent with the medical

evidence as a whole and not supported by acceptable diagnostic findings." T. 21.[4]

In regard to pain symptoms, Milliman's medical records support his argument that he consistently experienced some degree of pain. See T. 338, 381. However, pain alone is rarely enough to support a disability finding because "disability requires more than mere inability to work without pain." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Further, "[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Id. In finding that Milliman was only partially credible, the ALJ noted that, despite Milliman's complaints of constant and severe pain, he frequently missed or cancelled his medical appointments and was inconsistent with his medication regimen. T. 21, 337. Although Milliman was referred to a pain management specialist and placed on hydrocodone after March 24, 2011, he was not taking any pain medication prior to that date, and stated that he did not wish to start taking any medication. Id. at 338-39. Milliman had previously been on a narcotic pain medication regimen that was discontinued on January 24, 2011 after tests revealed that he was not actually taking the medication. Id. at 422. An October 27, 2010 office visit note revealed that Vera had been informed that Milliman had been selling his prescribed narcotics. Id. at 425. Despite Vera's March 24, 2011 recommendation that Milliman follow up with pain management, Milliman was discharged from New York Spine & Wellness Center, who had been providing him pain management services, for his failure to keep

---

[4] For analysis of the weight afforded to the opinions of Vera and Dr. Amidon, and analysis of the inconsistencies between the opinions of Vera and Dr. Amidon and the medical evidence as a whole, see section D.1.ii supra.

11

appointments. Id. at 337.

The ALJ gave significant weight to Dr. Kalyani Ganesh, M.D., a consultative examiner, who conducted a physical examination of Milliman and issued a Medical Source Statement ("MSS"). T. 21, 383-86. Dr. Ganesh concluded that Milliman had "a moderate degree of limitation sitting, standing, walking, climbing, lifting, carrying, pushing, pulling, and bending." Id. at 385. The ALJ also gave significant weight to Dr. David Eng, Milliman's treating physician, who performed surgery on Milliman's back in 2009 and who examined him on September 26, 2011 and stated that, "[o]verall, [Milliman] feels great. He has done heavy activities at home without any difficulty." Id. at 21, 498. Dr. Eng further stated that he "think[s] [Milliman] can return to work without any difficulty." Id. at 498. Further, the ALJ observed at the hearing that Milliman did not appear to be in any pain and did not require a cane to ambulate. Id. at 21. Additionally, the ALJ found that diagnostic testing did not reveal any severe problems with plaintiff's back. See id. at 387 (noting no compression fracture of Milliman's lumbosacral spine); id. at 362 (noting that an x-ray revealed "no new abnormalities," that "alignment is stable," and that "disc spaces. . .are appropriate."); id. at 485 (noting that "findings [were] consistent with chronic right L5 radiculopathy", but that EMG and NCV findings were negative for peripheral neuropathy or peripheral nerve entrapment).

In regard to Milliman's psychological symptoms, the ALJ noted that, even though Milliman had stated that he could not perform his prior work activities, he could still exercise; cook; mow the lawn; shop; drive; perform light housework; and personally care for himself, with some limitations. T. 21, 241, 381. Despite his claims of pain and inability to concentrate, Milliman testified that he shops, mows the lawn and snow blows

12

the driveway in the winter, with breaks.  Id. at 41.  To support his credibility determination, the ALJ gave significant weight to Dr. Jeanne Shapiro, Ph.D., who examined Milliman on June 10, 2011.  T. 379-82.  Dr. Shapiro noted that Milliman had previously been hospitalized for psychiatric issues three to four years prior to her examination.  Id. at 379.  She also reported that Milliman appeared to be limping, and that he used a back brace.  Id. at 381.  Although Dr. Shapiro found that "[Milliman's] mood was reflective of physical pain[,]" Milliman reported no psychiatric symptoms, and Dr. Shapiro ultimately concluded that "the claimant appears to be capable of performing simple and some complex tasks with supervision and independently."  Id. at 382.  She further concluded that Milliman could maintain a routine, follow a schedule, learn new tasks, maintain attention and concentration for tasks, make appropriate decisions, interact with others and handle stress.  Id.  She concluded that her examination of Milliman "suggest[ed] no significant psychiatric problems," and that his prognosis is "good."  Id.

Additionally, agency mental health consultant C. Butensky observed that Milliman did not follow through with treatment recommendations for his mental health problems, and denied any mental health issues at his consultative examination with Dr. Shapiro on June 10, 2011.  T. 400.  Butensky, after having reviewed the evidence in Milliman's health records, concluded that Milliman suffers from only "mild to moderate psychiatric impairment for which he is not in treatment."  Id.  He further concluded that Milliman "retains the capacity to perform simple job tasks, sustain attention/concentration for simple job tasks, interact appropriately with coworkers and supervisors and adapt to changes in a routine work setting."  Id.

13

Here, the ALJ's credibility determination is supported by substantial evidence. A claimant's subjective complaints of pain may be found incredible where "the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure[.]" Stewart v. Barnhart, 235 F.R.D. 579, 590 (W.D.N.Y. 2006) (quoting SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996)). Here, the record is replete with instances where Milliman did not follow through with recommended treatment. See Miller v. Colvin, No. 13-CV-6512 EAW, 2015 WL 628359, at *12 (W.D.N.Y. Feb. 12, 2015) (holding that an ALJ is permitted to consider a plaintiff's failure to seek treatment in making a credibility determination) (citing Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989)) (additional citations omitted); cf. Hamilton v. Colvin, 8 F. Supp. 3d 232, 240 (N.D.N.Y. 2013) (finding that an ALJ may not draw a negative inference regarding a plaintiff's failure to seek treatment without first considering any explanations as to why the plaintiff did not seek treatment). In considering Milliman's instances of noncompliance, the ALJ also noted that Vera had been informed that Milliman may have been selling his prescribed narcotics and that Milliman tested negative for narcotic in his system. See Wells v. Colvin, No. 13-CV-6593 EAW, 2015 WL 770046, at *10 (Feb. 24, 2015) (noting that the plaintiff had abused her narcotic prescription in assessing her credibility); see also Calabrese v. Astrue, 358 F. App'x 274, 278 (2d Cir. 2009) (noting plaintiff's noncompliance with medication in discrediting her subjective complaints). Milliman did not provide any reason as to why he did not follow through on recommended treatment, and therefore, the ALJ properly weighed the noncompliance along with medical reports indicating that Milliman's physical and mental conditions were not as severe as he stated, in finding

14

Milliman only partially credible.

Accordingly, the ALJ's finding that Milliman was only partially credible is supported by substantial evidence, and it is recommended that Milliman's request to remand on this issue be denied.

### ii. Treating Physician's Rule

Milliman contends that the ALJ erred when he failed to give controlling weight to the opinions of Dr. Amidon and Vera. Dkt. No. 21 at 9-16. When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw, 221 F.3d at 134. "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D. Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the

15

opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e) (2005).

Milliman contends that the ALJ erred in not assigning controlling weight to the opinion of his "treating provider." Dkt. No. 21 at 9. It is unclear from Milliman's brief whether he is referring to Dr. Amidon or Vera as his "treating provider." Although Milliman refers to Dr. Amidon as his "treating physician" in his brief, it appears that the only report signed by Dr. Amidon is a Medical Source Statement (MSS), jointly signed by Dr. Amidon and Vera, dated August 29, 2011. T. 478-79. To the extent that Milliman argues that Dr. Amidon is his "treating physician," the record indicates otherwise. The administrative record does not suggest that Dr. Amidon personally examined Milliman or entered into a treatment relationship with him. See, e.g., Beebe v. Astrue, No. 5:10-CV-1467 (MAD), 2012 WL 3791258, at *8 (N.D.N.Y. Aug. 31, 2012) (finding that doctor's opinion was not entitled to controlling weight because he never "personally examined plaintiff or had an ongoing treatment and physician-patient relationship with plaintiff."). Therefore, Dr. Amidon's opinion cannot be considered that of a treating physician entitled to controlling weight solely because he co-signed a MSS. In any case, a treating physician's opinion will not be afforded controlling weight if there is evidence to the contrary in the record, and the opinions of consultative examiners may constitute such evidence. Mongeur, 722 F.3d at 1039. The ALJ stated that he

gave little weight to the opinions of Dr. Amidon and Vera because "their opinions are inconsistent with the medical evidence as a whole and not supported by acceptable diagnostic findings." Id. at 21; see 20 C.F.R. 404.1527(c). Based on the record, the Court finds that substantial evidence supports the ALJ's decision to assign little weight to the opinion of Dr. Amidon.

Milliman also contends that the ALJ erred by giving little weight to the opinion of Vera, a nurse practitioner. Dkt. No. 21 at 9-16. Because a nurse practitioner is not an "acceptable medical source," Vera's opinion was not entitled to the controlling weight afforded to treating physicians' opinions. See Duell v. Astrue, No. 8:08-CV-969, 2010 WL 87298, at *6 (N.D.N.Y. Jan. 5, 2010). However, "the Second Circuit has long recognized that the opinions of a nurse practitioner who regularly treats a claimant is entitled to 'some extra consideration.'" Id. (quoting Mongeur, 722 F.2d at 1039 n.2). In this case, the ALJ did consider Vera's opinion and determined that his opinion was "inconsistent with the medical evidence as a whole and not supported by acceptable diagnostic findings." T. 21. The ALJ determined that, although the MSS completed by Vera and Dr. Amidon stated that Milliman should never, kneel, crouch, crawl or stoop, there was nothing in the objective medical evidence or in the examinations by other medical sources to indicate that Milliman's condition necessitated those limitations. Id. at 21-22. Indeed, the consultative examiners determined that Milliman could sit, stand, walk, climb, lift, carry, push, pull, and bend with only a moderate degree of limitation. Id. at 385. Dr. Eng, who performed back surgery on Milliman in 2009, examined him again on September 26, 2011, approximately six months after Milliman's alleged onset date. Id. at 498. At that examination, Milliman reported that he "feels great" and wants

17

to go back to work.  Id.  Dr. Eng's objective findings indicated that Milliman was in "no acute distress," had symmetric strength, and could raise from a supine position without any issues.  Id.  At a later examination, on April 12, 2012, after Milliman's unsuccessful attempt to return to work from October 2011-February 2012, Dr. Eng stated that an MRI taken on March 6, 2012, as compared to an MRI taken on June 15, 2009, showed "some narrowing of the foramen at L5-S1" and "some degenerative disease at L1-L2" but "not [sic] significant change."  Id. at 512.  At this examination, Dr. Eng's objective findings indicated that Milliman "had symmetric strength," and "[n]o straight or crossed leg raising."  Id.  Further, the diagnostic evidence relied upon by the ALJ indicated that Milliman's condition was not as severe as he claimed.  An x-ray of Milliman's lumbosacral spine, ordered by Vera, showed that "alignment is stable" and "disc spaces . . . are appropriate."  Id. at 362.  EMG and NCV findings were within normal limits.  Id. at 357.  The doctor interpreting these findings also stated that "[t]here appears to be old nerve damage but nothing acute or ongoing."  Id.  Vera's office visit notes acknowledge Milliman's subjective complaints of pain.  Id. at 336-78.  However, the notes contain very few objective findings, and contain no discussion of any diagnostic test results.  Id.

As to Milliman's alleged psychological impairments, the consultative examiner, Dr. Jeanne Shapiro, determined that Milliman is capable of understanding and following simple instructions and directions.  T. 382.  Dr. Shapiro also determined that Milliman could perform simple and some complex tasks both with supervision and independently, while maintaining attention and concentration for these tasks.  Id.  Further, she determined that he could learn new tasks, maintain a routine and schedule, make appropriate decisions, and relate to and interact moderately with

18

others.  Id.  She also concluded that Milliman appeared capable of managing stress. Id.  Notably, Milliman never sought professional treatment for his mental health issues, despite recommendations from Vera.  See id. at 340 (noting that Vera requested that Milliman "consider psychiatric evaluation and counseling.").  Butensky, a State agency psychologist, also determined that Milliman retained "the capacity to perform simple job tasks, sustain attention/concentration for simple job tasks, interact appropriately with coworkers and supervisors and adapt to changes in a routine work setting." Id. at 400.  Although Milliman was previously hospitalized for his reports of depression and suicidal thoughts, the medical staff providing his care determined that the deterioration of his mood was attributable to cocaine and cannabis use.  Id. at 306.  He was discharged as "psychiatrically stable[.]"  Id.  Milliman also denied any psychological symptoms to Dr. Shapiro.  Id. at 382.

Accordingly, there is substantial evidence in the record to support the ALJ's decision to afford little weight to the opinions of Dr. Amidon and Vera and it is recommended that Milliman's request to remand on this issue be denied.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Milliman's motion for a finding of disability (Dkt. No. 21) be **DENIED** and the Commissioner's decision finding no disability be **AFFIRMED**.

It is **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

Date: August 27, 2015
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge